```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GLOBALTEX GROUP, LTD.,

                 Plaintiff,                           MEMORANDUM & ORDER

        -against-
                                                      09-CV-235 (JBW)

TRENDS SPORTSWEAR, LTD.,
PRETTY GIRL, INC.,
ALBERT NIGRI,

                 Defendants.
-------------------------------------------------------------x
```
JACK B. WEINSTEIN, Senior United States District Judge:

I. Introduction

Globaltex Group, Ltd. ("Globaltex") brings five causes of action against defendants Trends Sportswear, Ltd. ("Trends Sportswear"), Pretty Girl, Inc. ("PG"), and Albert Nigri: (1) breach of contract against Trends Sportswear and PG; (2) conversion against Trends Sportswear and PG; (3) unjust enrichment against Trends Sportswear and PG; (4) promissory fraud against all defendants; and (5) tortious interference with contractual relations against Albert Nigri.

Plaintiff is incorporated under the laws of Hong Kong; its principal place of business is in Hong Kong. Defendants are all citizens of the State of New York. Subject matter jurisdiction is based on diversity. *See* 28 U.S.C. § 1332(a).

Defendants move to dismiss, arguing that: (1) all claims should be dismissed because plaintiff lacks standing to sue pursuant to New York Business Corporation Law § 1312(a); and (2) plaintiff fails to state a claim for which it may be entitled to relief on all claims except the breach of contract claim against Trends Sportswear.

For the reasons stated below and on the record at the hearing of April 21, 2009, the motion to dismiss is denied.

1



II. Facts

Globaltex is incorporated under the laws of Hong Kong and is headquartered in Hong Kong. Wong Aff. ¶ 1. It is in the business of purchasing apparel manufactured in China and selling it to corporate customers in the United States. Compl. ¶ 3. It does not maintain a phone number, office, warehouse, bank account, or sales representative anywhere in the United States. Wong Aff. ¶ 7. The company does not actively solicit customers in New York; Belinda Wong, the general manager of Globaltex, visits existing and potential clients in New York for approximately three weeks each year. *Id.* ¶¶ 8-9. American customers are primarily solicited by Globaltex at an apparel industry trade show held annually in Las Vegas, Nevada. *Id.* ¶ 9. PG and Trends Sportswear have been Globaltex clients for some five years, *id.* ¶ 12. Plaintiff may have other New York-based customers. S. Nigri Decl. ¶¶ 4-5.

Globaltex sold seventeen containers of apparel to Trends Sportswear and PG. Four of the seventeen shipments from Globaltex were sold on a "delivered, duty paid" basis. Compl. ¶¶ 13-14. Those shipments were received, accepted, and paid for without dispute. The term of sale for the remaining thirteen shipments was "FOB China" – that is, title of the goods was passed to the buyer at the point the goods were delivered to the shipping vessel in Asia for transport. *Id.* ¶¶ 11-12, 15-17. Nine of these thirteen shipped containers were received and accepted by the defendants without complaint. *Id.* The other four "FOB China" shipments – except a number of overalls in those shipments, which were delivered – are apparently being detained by U.S. Customs and Border Protection due to a purported investigation as to corporate defendants' conduct in another matter. *Id.*

The agreed-upon total sale price for the seventeen shipments was $3,179,626.18. *Id.* ¶ 20. A payment of $335,479.78 was credited to this balance owed. *Id.* ¶ 22. Partial payment for the shipments, in the amount of $1,057,325.70, has been transmitted. *Id.* ¶ 21. The balance now

claimed to be outstanding is $1,786,822.68. *Id.* ¶ 22. Trends Sportswear and PG have purportedly refused to remit the outstanding payment, allegedly at the direction of Albert Nigri. *See id.* ¶ 24.

Brenda Wong, the general manager of plaintiff-Globaltex, claims that her primary contact for all or most of the seventeen shipments has been Albert Nigri. Wong Aff. ¶¶ 12-16. Albert Nigri is the president of PG; Salim Nigri, who states that he is not related to Albert Nigri, is the president and owner of Trends Sportswear. *See* S. Nigri Decl. ¶¶ 1-2, Feb. 16, 2009; A. Nigri Decl. ¶¶ 1-4.

The relationship between PG and Trends Sportswear is unclear but substantial. *See, e.g.*, Wong Aff., Ex. B (Email correspondence between Globaltex and A. Nigri and S. Nigri, both of whom used PG-based email addresses); Ex. C (Purchase Order No. 2135 made by PG *and* Trends Sportswear to Globaltex); Ex. D (Documentation indicating a number of payments from PG to Globaltex). Official invoices indicate Trends Sportswear has made several payments to plaintiff on most of the shipments from plaintiff. Some amount of collaboration on orders of clothing is evident with respect to the two companies. *See* S. Nigri Decl. Further Supp. Def. Mot. Dismiss ¶¶ 5-6; Wong Aff. ¶¶ 12-16. PG and Trends Sportswear share the same company address; PG uses the office section of the building and Trends Sportswear uses the warehouse facility. *See* S. Nigri Decl. Further Supp. Def. Mot. Dismiss ¶ 3.

Defendants do not admit that a contract for the alleged items, whether written or otherwise, exists between plaintiff and any of the defendants. They instead contend that the case should proceed based on the alleged "transactions" between plaintiff and Trends Sportswear. See Def. Mot. Dismiss at 5-6, 13.

Plaintiff seeks damages in the amount of the claimed unpaid balance plus punitive damages.

III. Challenge as to Plaintiff's Standing to Bring Action

A. Law

"A foreign corporation *doing business* in [New York State] without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute." N.Y. Bus. Corp. Law § 1312(a) (emphasis added). The state law provision applies to a federal court sitting in diversity. *See Netherlands Shipmortgage v. Madias*, 717 F.2d 731, 735 (2d Cir. 1983). Defendants claim that plaintiff's business activity in New York makes it an unauthorized foreign corporation that is precluded from bringing this action, whether in the state or federal courts. *See Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949).

That the "doing business" requirement in section 1312 "cannot be taken literally is quite evident. A foreign corporation may transact some kinds of business within the state without procuring a certificate" authorizing it to do business in New York. *International Fuel & Iron v. Donner Steel*, 242 N.Y. 224, 229 (1926). The court must engage in a fact-specific analysis to determine whether section 1312(a) bars a foreign corporate plaintiff's suit. *Von Aryx v. Breitenstein*, 384 N.Y.S. 2d 895, 897 (N.Y. App. Div. 1976). The inquiry is based on whether the foreign corporation's business presence in New York is of a nature that is permanent, continuous, and regular. *See Netherlands Shipmortgage*, 717 F.2d at 735. There is a presumption that foreign corporations are not "doing business" as defined by section 1312(a). *See Mayatextil v. Liztex*, No. 92-4528, 1993 WL 51094, at *6 (S.D.N.Y. Feb 24, 1993) ("[T]he party asserting a § 1312 defense must show either ongoing intrastate activity by the foreign corporation or 'evidence of a substantial and permanent or continuous business activity in the

4

state, i.e., evidence that the corporation has localized some portion of its business activity in New York.'") (quoting *Netherlands Shipmortgage*, 717 F.2d at 739).

Several factors may be considered in the section 1312(a) "doing business" inquiry, but "a temporary or an insubstantial business presence will not warrant an inference that a foreign corporation is doing business in New York." *Netherlands Shipmortgage*, 717 F.2d at 738. *See also Lok Prakashan v. India Abroad Publications*, 94 Fed. App'x 856 (2d Cir. 2004) (party maintaining no office, owning no real property, and having no employees in New York found not to be "doing business" in New York); *S & T Bank v. Spectrum Cabinet*, 668 N.Y.S. 2d 641 (N.Y. App. Div. 1998), (shipping a "large amount of product" into New York was insufficient to establish that a foreign corporation was "doing business"); *Uribe v. Merchants Bank*, 697 N.Y.S. 2d 279 (N.Y. App. Div. 1999) (solicitation of business and facilitating the sale and delivery of its merchandise incidental to its business in interstate and international commerce do not constitute "doing business in this state"); *Samuels v. Mott*, 211 N.Y.S. 2d 242 (N.Y. Sup. Ct. 1960) (travel of foreign corporation's representative into New York for solicitation and occasional negotiations does not constitute "doing business"); *Hastings v. Piper Aircraft Corp.*, 84 N.Y.S. 2d 580, 584 (N.Y. App. Div. 1948) (retention of and consultation with New York counsel does not constitute "doing business").

B. Application of Facts to Law

Globaltex's contacts with present and potential customers in the State of New York, through its general manager and otherwise, are not sufficient to rebut the presumption that Globaltex is not "doing business" in New York for purposes of the section 1312 analysis. *See Netherlands Shipmortgage*, 717 F.2d at 736. Its contacts with New York are sporadic and insubstantial.

Defendants' motion to dismiss on this ground is denied.

IV. Challenge as to Individual Causes of Action

   A. Legal Standard for Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief may be granted." Defendant has the burden of proving "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In reviewing a Rule 12(b)(6) motion, the task of the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). A court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

   B. Analysis of Defendants' Claims on Motion to Dismiss

      1. Breach of Contract Claim

Plaintiff brings a claim for breach of contract against Trends Sportswear and PG. Defendants argue that plaintiff's breach of contract action should be dismissed as to PG because the four alleged transactions at issue are between Globaltex and Trends Sportswear only.

An action for breach of contract requires that a contractual agreement exist between the plaintiff and defendant. *See Eternity Global Master Fund Ltd. v. Moran Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004); *Banks v. Correctional Services Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007). Though further discovery may bear out the fact that only Trends Sportswear is bound by an enforceable agreement, there is considerable support for the contention that such an agreement existed between plaintiff and PG, whether by oral, written, or

6

other communications between the parties. There are indications that PG and Trends Sportswear are overlapping entities; plaintiff has done business with defendants under both trade monikers. *See, e.g.*, Wong Aff., Ex. B (Email correspondence between Globaltex and A. Nigri and S. Nigri, both of whom used PG-based email addresses); Ex. C (Purchase Order No. 2135 made by PG *and* Trends Sportswear to Globaltex); Ex. D (Documentation indicating a number of payments from PG to Globaltex).

On the instant motion to dismiss, it would be premature to dismiss the claim against PG for breach of contract. *See Banks*, 475 F. Supp. 2d at 195; *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 575, 587 (2d Cir. 2006). By motion for summary judgment or at trial, the issue of which parties were bound by a contractual agreement, if one existed, may be considered and resolved. Plaintiff will not be allowed to obtain a remedy against both defendants that would constitute double recovery.

Defendants' motion to dismiss the breach of contract action as to PG is denied.

### 2. Conversion Claim

Plaintiff brings a claim for the tort of conversion against Trends Sportswear and PG. Defendants argue that this claim should be dismissed as to both corporate defendants because it is redundant of the breach of contract claim.

Conversion occurs when a defendant exercises "unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 590 N.Y.S. 2d 201 (N.Y. App. Div. 1992). In cases where there is no dispute as to whether a valid contract exists, "claims for conversion . . . will be deemed redundant when damages are merely being sought for breach of contract." *Rolls-Royce Motor Cars v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (internal quotation marks and citations omitted). "To state a viable conversion claim . . .

7

plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Id.* (internal quotation marks and citations omitted).

In the present case, there is conceivably a dispute as to whether a valid contract exists with respect to the goods at issue and the disputed balance owed to plaintiff. If, after discovery, it is determined that there was no valid contract, other case theories should be available to the plaintiff, including the tort of conversion. Should the evidence show a binding agreement, the tort claims may then be deemed duplicative and properly dismissed.

Defendants' motion to dismiss plaintiff's conversion claims is denied.

### 3. Unjust Enrichment Claim

Plaintiff brings a claim of unjust enrichment against Trends Sportswear and PG. Defendants move to dismiss the cause of action as redundant of the breach of contract claim.

To state a claim for unjust enrichment, "plaintiff must establish 1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). A claim of unjust enrichment, based on a quasi-contract theory, cannot stand where there is a clear, valid contract:

> [U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract to prevent one person who has obtained a benefit from another from unjustly enriching himself at the other party's expense. Such an agreement will not be implied, however, *where there is a valid express agreement between the parties which explicitly covers the same specific subject matter for which the implied agreement is sought.*

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997) (internal punctuation, quotation marks, and citations omitted) (emphasis added).

In *Lightfoot*, there was no dispute that there existed a valid contractual agreement. The quasi-contract claims were thus redundant and warranted dismissal. *Id.* In contrast, this case contains a dispute about whether there is a valid contract between plaintiff and both (or either)

defendants. As with the conversion claim, if a valid contract is established, this claim will be redundant and warrant dismissal. Such dismissal is premature at this stage of the litigation.

Defendants' motion to dismiss plaintiff's unjust enrichment claims is denied.

### 4. Promissory Fraud Claim

Plaintiff brings a claim of promissory fraud against all defendants. Defendants move to dismiss the claim as duplicative of that for breach of contract and as lacking adequate specificity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

To establish a promissory fraud cause of action, plaintiff must show (1) that there was a material, false representation; (2) made with knowledge of its falsity; (3) an intent to defraud; (4) that plaintiff reasonably relied upon; (5) causing the plaintiff damages. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 (2d Cir. 1999) (collecting cases applying five-part test).

Like the claims of conversion and unjust enrichment, the promissory fraud claim may be duplicative and necessitate dismissal if and when a valid contract is established as to the disputed goods. *See Telecom Intern. America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[U]nder New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'") (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 62 (S.D.N.Y. 1994)); *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 109 (S.D.N.Y. 1997) ("Under New York law, a claim for common law fraud will not lie if that claim is duplicative of a claim for breach of contract").

A cause of action for fraud may be maintained on the basis of allegations that a party made a collateral or extraneous misrepresentation that induced the contract but cannot exist when

9

it arises out of the same facts as the breach of contract claim, with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations. *See PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 761-62 (S.D.N.Y. 1995). Such a determination would be necessary on consideration of a motion for summary judgment or at trial.

It is further contended that the claim lacks adequate specificity and should be dismissed pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. That rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants' argument that plaintiff's claim lacks sufficient specificity is without merit. The complaint and affidavit of Ms. Wong allege that corporate defendants and defendant Nigri induced plaintiff to ship the now disputed goods based on a false promise of payment for those goods. Adequate information as to the business relationship between the parties, the goods provided to defendants by plaintiff, the amount purportedly owed, and other allegations informing the nature of the claims has been provided by plaintiff to meet the Rule 9(b) specificity requirements.

Defendants' motion to dismiss plaintiff's claims of promissory fraud is denied.

### 5. Tortious Interference with Contractual Relations Claim

Plaintiff finally alleges tortious interference with contractual relations against defendant Albert Nigri. Nigri moves to dismiss the claim on the ground that he had no contractual relationship with plaintiff and so cannot be liable under this case theory.

The elements of a tortious interference claim are: (a) that a valid contract existed; *(b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract*; and (d) that the breach resulted in damage to the plaintiff.

*See Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996). Defendant's motion is based on a misconception that the tort action requires Nigri, a third party, to in fact be a party to the contract.

Though there appears to be scant evidence of liability under this case theory, the motion to dismiss must be denied at this stage of the litigation, pending discovery and summary judgment proceedings.

Defendants' motion to dismiss plaintiff's claim for tortious interference with contractual relations is denied.

### 6. Claim for Punitive Damages

Punitive damages are likely unwarranted in the present case. The instant motion is nevertheless not the appropriate time to grant a request to preclude punitive damages. Such a motion is denied.

## V. Conclusion

Defendants' motion must be denied. Further discovery and judicial proceedings are necessary before the case may be properly narrowed.

The parties have agreed that the case be referred for mediation. Trial is set for July 20, 2009.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 4, 2009
Brooklyn, New York