UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GLOBALTEX GROUP LTD.,

        Plaintiff,

    – against –

TRENDS SPORTSWEAR LTD, PRETTY GIRL, INC., and ALBERT NIGRI,

        Defendants.

MEMORANDUM AND ORDER

09-CV-0235

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y.
★ APR 2 1 2010 ★
BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge:**

## I.   Introduction

Plaintiff Globaltex Group Ltd. ("Globaltex") seeks payment for containers of goods it shipped from China to buyers in the United States. Claims of breach of contract, unjust enrichment, conversion, promissory fraud, and tortious interference are brought.

Plaintiff is incorporated under the laws of Hong Kong; its principal place of business is in Hong Kong. Defendants are all citizens of the State of New York. Subject matter jurisdiction is predicated on diversity. New York state law governs. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); 28 U.S.C. § 1332(a).

Defendants Trends Sportswear Ltd. ("Trends"), Pretty Girl, Inc. ("Pretty Girl"), and Albert Nigri move for summary judgment. They argue that illegality—in the form of customs fraud committed in connection with the shipments in question—renders the contract unenforceable, and that the equal or lesser fault of defendants puts the parties "in pari delicto" with respect to the breach of contract claim. Defendants' motion does not address plaintiff's non-contract claims.



1

For the reasons stated below the motion for summary judgment is denied.

## II. Facts

Globaltex, a Hong Kong garment manufacturer, sold Pretty Girl seventeen containers of apparel. *See Globaltex Group Ltd. v. Trends Sportswear Ltd.*, 09-CV-235, 2009 WL 1270002 at *1 (E.D.N.Y. May 6, 2009 ). Albert Nigri is the president of Pretty Girl. *Id.* at 2. The apparel was shipped to defendant Trends, owned by Sam Nigri (of no relation to Albert) who was then to transfer it to Pretty Girl Inc. *See* Deposition of Belinda Wong 20:13-21:4, Sept. 19, 2009, Docket Entry No. 30-5 ("Wong Dep.") (deposition of Globaltex owner).

A "double invoicing" method was used to circumvent United States customs duties. One invoice, which understated the value, quantity, and quality of the goods, was presented to customs officials for purposes of calculating customs duties owed. *Id.* at 24:13-14. A second invoice stated the true value of the goods for payment by defendants. *See* Pl. Memo. of Law in Opp. to Mot. for Summ. J. 2, Docket Entry No. 31-11. All seventeen shipments were double invoiced. Wong Dep. at 24:13-14.

Four of the seventeen shipments from Globaltex were sold on a "delivered, duty paid" basis. *See Globaltex Group Ltd.*, 2009 WL 1270002 at *1. The term of sale for the remaining thirteen shipments was "FOB China"—that is, title of the goods passed to the buyer at the point the goods were delivered to the shipping vessel in Asia for transport. *Id.* Nine of these thirteen shipped containers were received and accepted by defendants without complaint. *Id.* The other four "FOB China" shipments are apparently being detained by U.S. Customs and Border Protection due to an investigation triggered by defendants' conduct in another matter. *Id.*

It is alleged that the agreed-upon total sale price for the seventeen shipments was $3,179,626.18. *Id.* at *2. A payment of $335,479.78 was credited to this balance, owed by

2

defendants from a prior unrelated transaction. *Id.* Defendants have made partial payment for the shipments, in the amount of $1,057,325.70. *Id.* The balance now claimed to be outstanding by Globaltex is $1,786,822.68. *Id.* Defendants refuse to pay the claimed amount. *Id.*

The existence of a contract is denied by defendants, but they argue that in any case the contract would be rendered unenforceable by its connection with customs fraud. *See generally* Mem. of Law in Supp. of Defs. Mot. for Summ. J., Docket Entry No. 30-7 ("Defs. Mem.").

All parties were aware of the fraudulent scheme to avoid customs duties. It is unclear who presented the fraudulent invoices to customs authorities, and whose idea it was to create the fraudulent invoices. Globaltex's owner testified in her deposition that the additional set of invoices, understating the value of the goods, was created upon the request of Albert Nigri. Wong Dep. at 20:13-21:4. She stated that, because of his difficulties with U.S. Customs, Albert Nigri requested that Globaltex ship through Trends rather than Pretty Girl, and that four of the shipments be made on a "delivered, duty paid" basis. *Id.*

## III. Law

### A. Summary Judgment

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Mitchell v. Washingtonville Central School District*, 190 F.3d 1, 5 (2d Cir. 1999). Dismissal is warranted when there is no genuine issue as to any material fact after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may not consist of "mere conclusory allegations, speculation or conjecture." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

### B. Enforceability of Illegal Contracts

In New York "[i]llegal contracts are, as a general rule, unenforceable." *Lloyd Capital Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 127 (1992). When the contract is facially valid, illegality bars enforcement only when it is "central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract." *McConnell v. Commonwealth Pictures Corp.* 7 N.Y.2d 465, 471 (1960) (holding contract unenforceable where plaintiff performed contractual obligations by means of bribery). Also relevant to the applicability of the doctrine is the type of illegality at issue:

> [T]he violation of a statute that is merely *malum prohibitum*, as opposed to *malum in se*, does not necessarily make a contract void and unenforceable, unless the Legislature intended to make it void. In determining whether to enforce provisions of a contract that is *malum prohibitum*, the court must consider several factors, central of which are the repugnance of the illegality, the express provisions of the statute violated, and the public policy considerations in refusing enforcement.

*Halpern v. Green*, 24 Misc.3d 1251 (N.Y. Sup. Ct. 2009); *see also Lloyd Capital Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 128 (1992) (where the statute at issue "was not *malum in se*, or evil in itself [but rather] *malum prohibitum* . . . . [U]nless public policy dictates otherwise, the contract should be enforced.").

4

"[F]orfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a sword for personal gain rather than a shield for the public good." *Lloyd Capital*, 80 N.Y.2d at 128 (internal citations and quotation marks omitted). *Id.* The New York Court of Appeals, in upholding a loan agreement that violated Federal Small Business Administration ("SBA") regulations, noted that

> the regulatory sanctions [provided by the SBA], reinforced by the potential civil liability where State law is also violated, quite complementarily and proportionately protect the underlying public policy. We therefore decline defendants' invitation to read into our State law greater rights and remedies than the Federal scheme provides, especially where the SBA was exercising its own remedial powers, and *where voiding the contract would result in an undeserved windfall to defendants.*

*Id.* at 128-29 (emphasis added); *see also Benjamin v. Koeppel*, 85 N.Y.2d 549 (1995); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, 28 F. Supp. 2d 126, 139 (S.D.N.Y. 1998) (observing that in New York illegal contracts are not unenforceable per se; rather, courts weigh a variety of factors).

The Court of Appeals for the Second Circuit, in an unpublished opinion, refused to enforce a contract that involved double invoicing similar to that at issue in this case. However, that case involved a joint venture between buyer and seller of which the double invoicing was an essential element. The court emphasized that "as the defrauding of Polish customs authorities was *necessary to ensure the profitability of the joint venture*, the parties' further claims . . . are barred by the illegality of their contract." *Nameh v. Muratex Corp.*, No. 01-7593, 2002 WL 971170, at *2 (2d Cir. May 10, 2002).

## C. In Pari Delicto

The doctrine of *in pari delicto*, Latin for "equally at fault," prevents a plaintiff from profiting from his own wrongdoing. It "is grounded on two premises: (1) courts should not lend their good offices to mediating disputes among wrongdoers; and (2) denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Wey v. New York Stock Exchange Inc.*, 15 Misc. 3d 1127 (N.Y. Sup. Ct. 2007) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985)).

In pari delicto is applicable to claims of breach of contract, unjust enrichment, conversion, rescission, or damages in tort. The doctrine acts as a bar where the plaintiff is at equal or greater fault than the defendant. If the defendant's conduct is the more egregious, plaintiff's claim is not barred. *See Pacurib v. Villacruz*, 183 Misc. 2d 850 (N.Y. Civ. Ct. 1999) (dismissing claims involving pyramid scheme as to one defendant, due to *in pari delicto*, but retaining claims against other defendant due to her greater fault).

Cases applying the doctrine generally look for wrongful conduct that is directly connected to the contract. "An agreement which is lawful on its face and which does not contemplate or necessarily entail unlawful conduct in its performance is enforceable by the promisee even though he engages in unlawful activity in the agreement's performance." *Hilgendorf v. Hilgendorf*, 241 A.D.2d 481, 481 (N.Y. App. Div. 1997) (internal citations and quotations omitted) (holding that stipulation of settlement agreement was enforceable, despite tax fraud committed by the parties).

## IV. Application of Law to Facts

### A. Illegality of the Contract

The contract between Globaltex and defendants bears no impropriety on its face; the illegality arises in connection with its performance in the passing of the merchandise through

6

customs. It appears that the double invoicing was only indirectly related to the contract, rather than being "central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract." *McConnel.* 7 N.Y.2d at 471.

The existence of criminal and civil regulatory penalties for misleading U.S. customs authorities "complementarily and proportionately protect[s] the underlying public policy." *Id.* at 128-29. Additional deterrence through refusal to impose civil liability does not appear to be necessary. Defendants' invocation of the illegality doctrine is unpersuasive in that they seek to use the doctrine "as a sword for personal gain rather than a shield for the public good." *Lloyd Capital*, 80 N.Y.2d at 128. Dismissal of plaintiff's claims on this basis would confer an undeserved windfall on defendants.

Dismissal of plaintiff's breach of contract claims on grounds of illegality is not warranted.

### B.     In Pari Delicto

Just as "one who seeks equity must do equity," *see, e.g., Lincoln Life and Annuity Co. of New York v. Caswell*, 31 A.D.3d 1, 11 (N.Y. App. Div. 2006), this court will not allow defendants to reap the benefit of their illegal conduct. Both parties were at fault and were aware of the improper double invoicing scheme. Both foresaw that the merchandise could be seized by customs, yet they took the risk for the sake of potential financial gain.

On the facts before the court, it is possible that the defendants were more at fault. Deposition testimony given by Globaltex's owner states that the fraudulent activity was at the behest of defendant Albert Nigri. The fact that defendants may have taken title to the goods in China, assuming the obligation to get them through customs, suggests possibly greater culpability on their part, at least as to the "FOB China" containers.

How the equities are to be apportioned on all containers remains unclear. At the least, there is a genuine issue of material fact as to the parties' relative levels of fault.

## V. Conclusion

Defendants' motion for summary judgment is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: April 20, 2010
Brooklyn, New York